**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOEUN SA,<br><br>   Petitioner,<br><br> v.<br><br>DERRAL ADAMS, Warden,<br><br>   Respondent.<br>_____/ | No. C 10-1012 CRB (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This is a federal habeas corpus action filed pursuant to 28 U.S.C. § 2254 by a pro se state prisoner. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 2007, an Alameda County Superior Court jury found petitioner guilty of first degree murder, possession of a firearm by a felon, and found that he had personally used and discharged a firearm in the commission of a murder. Consequent to the verdict, the trial court sentenced petitioner to a total term of 50 years-to-life in state prison. Petitioner filed the instant federal habeas petition after being denied relief from the verdicts on direct state review.

Evidence presented at trial shows that in 2005, petitioner shot and killed his girlfriend, Nancy Nguyen, after attending a party where her ex-boyfriend V.C. was also present. According to the testimony of various witnesses at the party and nearby,[1] petitioner, angry at Nguyen because she wanted to end their relationship and because she interacted with V.C. at the party, grabbed a resisting Nguyen, and forced her around a nearby corner into a cul-de-sac, and out of sight. One witness, Sophorn Ket, testified that as petitioner was forcing Nguyen down the street, he said, "Do you want to see her die?" Witnesses, who had seen petitioner waving a gun around earlier in the evening, also testified to hearing gunshots come from the area to which petitioner had taken Nguyen, the same area where her corpse was found. (Ans., Ex. D at 1–7.) According to the physical evidence, Nguyen was shot in the head at a very close range. (Id. at 7.)

At trial, petitioner admitted to killing Nguyen. Petitioner testified that he and Nguyen had started arguing as they left the party. According to petitioner, Nguyen told him during this argument that she wanted to break up with him, and petitioner told her that he did not want to end the relationship. Petitioner admitted to trying to pull a resisting Nguyen back into his car, and preventing her from leaving the area. Petitioner also testified that he grabbed Nguyen's arms at one point, and, with a gun in his waistband with the safety off, he followed Nguyen around the corner from the party into a cul-de-sac. Petitioner testified that Nguyen told him that his family were "going to die or something." Angry and "kind of drunk," petitioner "snapped right there," and shot Nguyen. (Id. at 1–2 & 6–7.)

As grounds for federal habeas relief, petitioner alleges that (1) there was insufficient evidence to support his conviction for first degree murder; (2) the prosecutor committed misconduct; (3) defense counsel rendered ineffective assistance; and (4) there was cumulative error.

---

[1] In particular, witnesses Christine Y. and her daughter Lily Doe, domiciled in the house next to the house where the party was held, and party-attendees D.C., brother to V.C., P.C., brother to D.C., V.C., and Sophorn Ket, petitioner's friend.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

**DISCUSSION**

**I.    Sufficiency of the Evidence**

Petitioner claims that there was insufficient evidence to support his conviction for first degree murder. (Pet. at 6.) More specifically, petitioner contends that the prosecution failed

to show a plan or motive. (Id.) "At best," petitioner asserts, "the evidence proves a second degree murder": "There is evidence of intent to kill, but the circumstances surrounding the shooting all point to a rash and impulsive act, a sudden flare of anger coupled with the ready means to kill." (Id.)

The state appellate court rejected petitioner's claim, finding substantial evidence to support the jury's verdict:

> In this case, [petitioner] does not dispute his responsibility for Nguyen's murder, but contends that there was no evidence of a plan or motive, and nothing in the manner of killing that reflects premeditation or deliberation. We do not agree. Substantial evidence supports the conclusion that he planned to kill Nguyen with a particular method, and had a motive for doing so; in essence, substantial evidence indicates he committed an execution-style killing in a calculated fashion because Nguyen wanted to end their relationship, demonstrating sufficient premeditation and deliberation to support the jury's verdict. Armed with a semi-automatic gun, [petitioner] argued and fought with Nguyen, first in a parked car and then on the street. [Petitioner] himself testified that she was trying to leave him, and that he did not want the relationship to end. [Witnesses] Lily, Christine, and Ket saw [petitioner] grab a resisting, unarmed Nguyen and force her towards 52nd Avenue, a cul-de-sac. Ket was certain that before [petitioner] forced Nguyen towards 52nd Avenue, she heard [petitioner] say in Cambodian, "Do you want to see her die?" [Witness] P.C. testified that, although he did not understand all the words [petitioner] said in Cambodian to the crowd as he argued with Nguyen, he understood, "do you guys," and that the neighbor Sareth told him what [petitioner] had said a few minutes later, which was, "Do you want to see her die?" This evidence indicated premeditation.
>
> [Witness] D.C. was "50-50" certain that he thought he heard [petitioner] say "die," and that he thought he heard [petitioner] say, "Do you all want to get shot?" [Petitioner] characterizes this testimony as inconsistent with Ket's and P.C.'s testimony, but this was not necessarily so. His recollection was relatively uncertain and does not establish inconsistency.
>
> [Petitioner] would not allow Nguyen to go, grabbing her by her arms, and forcing her down East 10th Street and onto 52nd Avenue's cul-de-sac, indicating that he was at this point seeking a relatively isolated area where he could shoot her without interference. Shortly after going into the cul-de-sac, he shot Nguyen once in the head from close range, a further indication of an already formed plan to kill her there, and immediately left. [Citation removed.]
>
> There was substantial evidence of alternative motive for [petitioner]'s actions as well, which can be inferred from the relationship between Nguyen and her ex-boyfriend V.C. [Petitioner] admitted that he fought with Nguyen regularly because he did not want her talking to anyone else. Nguyen and V.C. had been involved for two years, breaking up earlier in the year. After Nguyen and [petitioner] arrived on 53rd Avenue, Nguyen became involved in V.C.'s affairs, grabbing his phone to yell at his girlfriend before [petitioner] told her to

> return the phone, calling V.C. to tell him that Mow was coming to fight with him, and becoming involved in the fight. Ket testified that she heard [petitioner] say things to Nguyen indicating that he was mad that she had defended V.C. This evidence suggests that [petitioner] argued with Nguyen, and decided to kill her, at least in part as a result of these events.
>
> [Petitioner] contends that the evidence at best proves second degree murder, as [his] forcing Nguyen around the corner did not isolate her, given that they could be seen and heard by people at the party, and that the statement, "Do you want to see her die," assuming it was made, created only the "reasonable inference . . . that [petitioner] was preventing an intoxicated [Nguyen] from confronting Mow and his girlfriend." [Petitioner] does not support these contentions with citations to evidence in the record; in any event they amount to a rearguing of the evidence, rather than establishing a lack of substantial evidence for his first degree murder conviction.

(Ans., Ex. D at 10–11).

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" See id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. See Jackson, 443 U.S. at 324.

In California, first degree murder is the premeditated and deliberate unlawful killing of another with malice aforethought. See Cal. Pen. Code §§ 187 & 189. A premeditated killing under California law is a "killing [that] was the result of preexisting reflection and weighing of considerations rather than mere unconsidered or rash impulse." People v. Prince, 40 Cal.4th 1179, 1253 (2007) (citations omitted). The process of premeditation and deliberation "does not require any extended period of time." People v. Koontz, 27 Cal.4th 1041, 1080 (2002) (citations omitted). "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." (Id.) Planning activity, motive and the manner of the killing (such as an "execution-style" killing) are significant, though not the

1 exclusive, factors to consider when determining whether the killing was a result of
2 preexisting reflection. Prince, 40 Cal.4th at 1253 (citations omitted).

Under these legal principles, petitioner's claim cannot succeed. The record supports the conclusion that a rational trier of fact could have found the elements of first degree murder beyond a reasonable doubt. See Jackson, 443 U.S. at 319. First, the elements of an unlawful killing with malice aforethought are present. Petitioner admits to killing Nguyen, and concedes that his crime constitutes at least second degree murder. Second, premeditation and deliberation can be inferred from the testimonial evidence that petitioner argued with Nguyen regarding her ex-boyfriend V.C. just prior to the shooting, prevented a resisting Nguyen from leaving, asked whether anyone wanted to see her killed, isolated her from witnesses in the cul-de-sac, and then killed her in an "execution style," that is, she was shot in the head at a very close range. This evidence of motive, planning, and the manner of killing support the state appellate court's determination. On such a record, petitioner's claim that there was insufficient evidence to support a conviction for first degree murder is without merit. At a minimum, petitioner's claim must be denied because he has failed to show that there was "no reasonable basis for the state court to deny relief," Harrington v. Richter, 131 S. Ct. 770, 784 (2011), that is, he has not shown that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, 28 U.S.C. § 2254(d).

**II.     Alleged Prosecutorial Misconduct**

Petitioner claims that his conviction was obtained as a result of prosecutorial misconduct. (Pet. at 6.) More specifically, petitioner contends that the prosecutor argued on more than one occasion that the jury could not find petitioner guilty of voluntary manslaughter unless it found that his shooting of Nguyen was a reasonable response to provocation. (Id.) The state appellate court rejected this claim, finding that even though the prosecutor did commit misconduct in misstating the law, such misconduct was not prejudicial. It was not prejudicial because, in the opinion of the state appellate court, the trial

1 court had instructed the jury that it was to follow the court's, not counsel's, instructions, and
2 it gave the jury the correct instructions on the substantive law of voluntary manslaughter.
3 (Ans., Ex. D at 19–20.)

4       A defendant's due process rights are violated when a prosecutor's misconduct renders
5 a trial "fundamentally unfair." Darden v. Wainwright, 477 U.S. 168, 181 (1986). Under
6 Darden, the first issue is whether the prosecutor's remarks were improper; if so, the next
7 question is whether such conduct infected the trial with unfairness so that there was a due
8 process violation. Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005). In order to prevail
9 on federal habeas review, the prosecutor's misconduct must have resulted in prejudice, that
10 is, the misconduct must have had a substantial and injurious effect or influence in
11 determining the jury's verdict. Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citing
12 Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)).

13       The record supports petitioner's contention that the prosecutor, in his closing
14 argument and rebuttal, misstated the law regarding voluntary manslaughter several times.
15 (Id. at 16–17.) Two quotations will suffice to demonstrate this. In the first, the prosecutor
16 said that "in order to give [petitioner] a manslaughter, you have to decide that when a person
17 is breaking up with another, that is a reasonable response to shoot them in the face. That is
18 it. If you believe that that's reasonable and anyone of you would have done the same thing,
19 then call it a manslaughter." (Id. at 16.) In the second, the prosecutor told the jury that
20 "[t]here's no voluntary manslaughter if there's inadequate provocation. And so unless the 12
21 of you would have done the same thing in the same situation, there is no voluntary
22 manslaughter." (Id. at 17.) When defense counsel objected to this second example, the trial
23 court said, "I will give the instruction and they will see what it is. It is a reasonable person
24 standard."[2] (Id.)

---

[2] California defines "voluntary manslaughter" as "the unlawful killing of a human being without malice" upon "a sudden quarrel or heat of passion." See Cal. Pen. Code § 192. The killing must be in the "heat of passion," i.e., the effect of the provocation must be such that the defendant acts emotionally rather than rationally. The "passion" may be rage, anger, or any

Having just established that there was misconduct, the Court will now proceed to a prejudice analysis. The first factor in determining the prejudicial effects of misconduct is whether the trial court issued a curative instruction. When a curative instruction is issued, a court presumes that the jury has disregarded the inadmissible evidence or improper statement and that no due process violation occurred. See Greer v. Miller, 483 U.S. 756, 766 n.8 (1987). This presumption may be overcome if there is an "overwhelming probability" that the jury would be unable to disregard evidence and a strong likelihood that the effect of the misconduct would be "devastating" to the defendant. Id.

Under the legal principles cited above, petitioner's claim fails. First, the trial court issued a curative instruction after one of the misstatements. Second, before and after the presentation of evidence, the trial court instructed the jury that it had to follow the law as the trial court gave it, and that if there was any disagreement between the law as the court stated it and the way counsel stated it, the jury must use the law as given by the trial court. (Ans., Ans., Ex. G, Vol. 3 at 17–18 & Vol. 5 at 519.) Third, petitioner does not dispute that the trial court gave the jury the correct instructions on murder and manslaughter. On such a record, it must be presumed that the jury disregarded the prosecutor's statements, followed the legal instructions given by the trial court, and that no prejudice ensued. Jurors are presumed to follow their instructions. See Richardson v. Marsh, 481 U.S. 200, 206 (1987). Petitioner's mere allegation is insufficient to establish an "overwhelming probability" that the jury was unable to disregard the evidence or that there was a strong likelihood that the effect of the comments would be devastating to him. At a minimum, petitioner's claim must be denied because he has failed to show that there was "no reasonable basis for the state court to deny relief," Richter, 131 S. Ct. at 784, that is, he has not shown that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme

---

other intense emotion (except a desire for revenge). The question is one of fact for the jurors, but the test is objective — that of a reasonable person. See People v. Bridgehouse, 47 Cal. 2d 406, 413 (Cal. 1956), and People v. Borchers, 50 Cal. 2d 321, 329 (Cal. 1958).

Court precedent, 28 U.S.C. § 2254(d).[3]

### III.   Assistance of Counsel

Petitioner claims that defense counsel rendered ineffective assistance when he (A) failed to request a cautionary instruction regarding a "pre-offense" statement; and (B) failed to object to the prosecutor's misstatement of the law of voluntary manslaughter, the underlying issue of which was discussed above. (Pet. at 6 & 8–9.)

Claims of ineffective assistance of counsel are examined under Strickland v. Washington, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, id. at 687–68, "not whether it deviated from best practices or most common custom," Richter,131 S. Ct. at 788 (citing Strickland, 466 U.S. at 650). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Richter, 131 S. Ct. at 787 (quoting Strickland, 466 U.S. at 689). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.  Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. Overall, "the standard for judging counsel's

---

[3] This claim is also procedurally defaulted, as found by the state appellate court, Ans., Ex. D at 15, and asserted by respondent, id., Mem. of P. & A. at 13–14. Because petitioner failed to sufficiently object at trial and seek admonishments, the claim is procedurally defaulted, and therefore barred from federal habeas review, under the contemporaneous objection rule. See Coleman v. Thompson, 501 U.S. 722, 749–50 (1991), and Paulino v. Castro, 371 F.3d 1083, 1092–93 (9th Cir. 2004). Even if petitioner's claim were not procedurally defaulted, it also lacks merit, as the analysis above shows.

United States District Court
For the Northern District of California

representation is a most deferential one." Richter, 131 S. Ct. at 788.

### A.     Cautionary Instruction

Petitioner claims that defense counsel rendered ineffective assistance when he failed to ask for a cautionary instruction (CALJIC No. 2.71.7) regarding the jury's use of petitioner's pre-offense statement "Do you want to see her die?" (Pet. at 8.) The state appellate court rejected this claim, finding defense counsel's withholding of such a request as reasonable: "he [may have] preferred not to highlight [petitioner's] oral admission, which [petitioner] denied making, or because he thought the issue was adequately addressed by other instructions, including those on the credibility and believability of the witnesses." (Ans., Ex. D at 23.) Petitioner having been unable to establish ineffective assistance, he was also, according to the state appellate court, unable to show prejudice. (Id. at 24.)

The trial court did instruct the jury with CALJIC No. 2.71 ("Admission—Defined"), which, as read to petitioner's jury, is as follows:

> An admission is a statement made by the defendant which does not by itself acknowledge his guilt of the crimes for which the defendant is on trial but which statement tends to prove his guilt when considered with the rest of the evidence.
>
> You are the exclusive judges as to whether the defendant made an admission, and, if so, whether the statement is true in whole or in part.

(Id., Ex. G, Vol. 5 at 526.) The trial court omitted the rest of the standard CALJIC No. 2.71 instruction, which reads: "Evidence of an oral admission of [a] [the] defendant not contained in an audio or video recording and not made in court should be viewed with caution." Defense counsel did not request any alteration of this instruction, nor, as stated above, request that the trial court give CALJIC No. 2.71.7. (Id., Ex. D at 12.)

CALJIC No. 2.71.7 ("Pre-Offense Statement by Defendant"), petitioner's desired instruction, reads as follows:

> Evidence has been received from which you may find that an oral statement of [intent] [plan] [motive] [design] was made by the defendant before the offense with which [he] [she] is charged was committed. It is for you to decide whether the statement was made by [a] [the] defendant. Evidence of an oral statement ought to be viewed with caution.

A reviewing federal habeas court must accord tactical decisions by trial counsel considerable deference. "[C]ourts may not indulge 'post hoc rationalizations' for counsel's decision-making that contradicts the available evidence of counsel's actions . . . neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" Richter, 131 S. Ct. at 790 (citations omitted). Indeed, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." Id. at 791.

Here, petitioner is unable to demonstrate either a deficient performance or prejudice. As to the first Strickland prong, the record supports the state appellate court's conclusion that defense counsel's decision not to request an instruction was a reasonable choice under the circumstances. Not only would such an instruction call greater attention to the incriminating statement, the trial court gave many other instructions on how to resolve questions of witness credibility. Such instructions related to the evaluation of prior inconsistent statements, believability of witnesses, discrepancies in testimony, willfully false witnesses, weighing conflicting testimony, and sufficiency of the evidence. (See Ans., Ex. D at 14.) On such a record, petitioner has not shown that defense counsel's choice was anything other than a reasonable choice under the circumstances of the case. See Richter, 131 S. Ct. at 789–90.

As to the second Strickland prong, petitioner has not shown prejudice. Even though CALJIC No. 2.71.7 was not issued, the jury still had to decide (1) the central point of that instruction, that is, whether petitioner made the statement and had to do so in light of (2) the lengthy list of cautionary instructions regarding such evidence, referenced above. The record supports the state appellate court's determination that sufficient evidence existed on which the jury could find that petitioner made the statement. For example, Sophorn Ket, an eyewitness and petitioner's friend, testified at trial that she stood about nine feet from petitioner and Nguyen as they argued, and heard petitioner say in Cambodian, 'Do you want

to see her die?'" (Ans., Ex. D at 5–6.) Ket, who speaks and understand Cambodian, further testified that "she could not have misinterpreted [petitioner's] statement." (Id. at 6.) D.C., also an eyewitness, in addition to being V.C.'s brother, testified at trial that he heard petitioner say something in Cambodian, "die" being the only word from that statement D.C. understood. (Id. at 4.) Other witnesses testified to hearing bits of the statement. (Id. at 13–14.) On such a record, petitioner has not shown prejudice, considering that Ket testified with certainty as to what she heard and saw, and other witnesses provided corroborating evidence. See Richter, 131 S. Ct. 791. This Court must presume that the jury resolved any conflicts in the testimony in favor of the prosecution. See Jackson, 443 U.S. at 326. At a minimum, petitioner's claim must be denied because he has failed to show that there was "no reasonable basis for the state court to deny relief," Richter, 131 S. Ct. at 784, that is, he has not shown that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, 28 U.S.C. § 2254(d).

### B. Objecting to the Prosecutor's Misstatements

Petitioner claims that defense counsel rendered ineffective assistance when he failed to object to the prosecutor's misstatements regarding the law of voluntary manslaughter, the underlying circumstances of which were discussed above. (Pet. at 8.)

Petitioner's claim fails because he cannot demonstrate that he suffered prejudice. First, defense counsel did object, though only once. (Ans., Ex. D at 17.) Second, as stated above, the trial court, before and after the presentation of evidence, instructed the jury that it was to follow the law as the trial court gave it, and that if there was a disagreement between the law as given by counsel and that given by the court, that the jury was to follow the court's instructions. Also, the trial court, after the presentation of evidence, instructed the jury on the correct substantive law, reducing the ill-effects caused by defense counsel's failure to object. Furthermore, the trial court gave a cautionary statement in response to defense counsel's single objection to one of the prosecutor's misstatements. At a minimum, petitioner's claim must be denied because he has failed to show that there was "no reasonable

basis for the state court to deny relief," Richter, 131 S. Ct. at 784, that is, he has not shown that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, 28 U.S.C. § 2254(d).

## IV.   Cumulative Error

Petitioner claims that he was "denied due process by the combined effect of individually harmless errors which, in combination rendered the defense far less persuasive than it otherwise would have been." (Pet. at 9.) The state appellate court rejected this claim, concluding that "[t]o the extent that there may have been errors, there was no cumulative prejudice to warrant reversal." (Ans., Ex. D at 24.)

Although no single trial error is sufficiently prejudicial to warrant the granting of relief, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. See Alcala v. Woodford, 334 F.3d 862, 893–95 (9th Cir. 2003).

Apart from the prosecutor's misstatement of the law, petitioner has not shown that there were any constitutional errors at trial, harmless or otherwise, nor does he specify any under this claim. As the one error was not prejudicial, and as petitioner has not shown that other errors existed, there can be no cumulative effect resulting in prejudice. Id. At a minimum, petitioner's claim must be denied because he has failed to show that there was "no reasonable basis for the state court to deny relief," Richter, 131 S. Ct. at 784, that is, he has not shown that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, 28 U.S.C. § 2254(d).

## CONCLUSION

The state court's adjudication of the claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit.

The clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

DATED: March 29, 2011

CHARLES R. BREYER
United States District Judge